## FERNÁNDEZ ET AL. *v.* VELÁZQUEZ.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 621.—Resuelto en junio 9, 1911.

ACCIÓN REIVINDICATORIA—TÍTULO DEL DEMANDANTE—LIQUIDACIÓN DE HERENCIA.—
Mientras no se practique la liquidación de la herencia y por consecuencia de
ella la correspondiente partición y adjudicación a cada heredero de lo que le
corresponde, carecen éstos de verdadero título que les sirva para reivindicar
bienes concretos y determinados de la misma herencia.

ID.—ORDEN DE EJECUCIÓN CONTRA UNA PERSONA FALLECIDA—NULIDAD DE UNA
ORDEN DE EJECUCIÓN—ANULABLE—LEY EN PUERTO RICO.—Según la ley co-
mún y la jurisprudencia casi general en los Estados Unidos, una orden de
ejecución contra una persona fallecida, es una nulidad. En algunos casos
tal orden ha sido declarada anulable solamente. Cuando la regla de la ley
común ha sido modificada por algún estatuto, éste debe seguirse estrictamente.
En Puerto Rico, de acuerdo con el artículo 244 del Código de Enjuiciamento
Civil, no obstante la muerte del deudor declarado tal por la sentencia, puede
librarse orden de ejecución de la misma, si la sentencia fuere para recobrar
propiedad real o personal.

INSCRIPCIÓN EN EL REGISTRO DE LA PROPIEDAD—ACTOS NULOS—TERCEROS.—La
inscripción no convalida los actos o contratos que sean nulos con arreglo a las
leyes, pero los actos y contratos que se ejecuten u otorguen por persona que
en el registro aparezca con derecho para ello no se convalidarán en cuanto
a tercero, una vez inscritos, aunque después anule o resuelva el derecho del
otorgante en virtud de título anterior no inscrito, o de causas que no resultan
claramente del mismo registro.

ID.—DERECHOS DE LOS HEREDEROS.—Para el registro, el derecho del heredero nace
de la inscripción.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. T. D. Mott, Jr. y Hord
& Scoville.*

Abogado del apelado: *Sr. Luis Muñoz Morales.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tri-
bunal.

El presente es un caso sobre reivindicación e indemniza-
ción por daños y perjuicios. Los demandantes alegaron, en
resumen: 1º. que dos de ellos, José Maximino y Catalina Do-
lores Fernández y Borrás, son menores de edad y comparecen
bajo la autoridad y representados por su padre el otro de-

mandante; 2°. que Evaristo Fernández comparece por su propio derecho y en representación de sus dichos menores hijos; 3°. que los demandantes son dueños de la mitad de tres fincas rústicas de 76.77 cuerdas, de 60 cuerdas y de 1½ cuerdas, que se describen detalladamente; 4°. que desde o alrededor del 18 de julio de 1908, el demandado Velázquez ha estado y está en posesión de dichas fincas, pretendiendo ser dueño legítimo de las mismas; que dicho demandado no es el dueño, ni tiene título legal de dichos terrenos o de cualquier parte de ellos; que dicho demandado está ilegal e injustamente en posesión de las fincas contra la voluntad de los demandantes, causando a éstos perjuicios por valor de diez mil dollars, y que las fincas valen veinte mil dollars.

La demanda termina suplicando a la corte que declare a los demandantes dueños de la mitad proindivisa de las fincas descritas, que ellos tenían derecho a su posesión durante todo el tiempo mencionado en la demanda y que se ordene al demandado que les pague diez mil dollars como daños.

El demandado contestó alegando, en resumen, 1°., que admite las alegaciones 1ª. y 2ª. de la demanda; 2°. que niega que los demandantes sean hoy ni hayan sido nunca dueños de la mitad del dominio de las fincas descritas en la demanda; 3°. que el dominio y posesión de la finca de 76.77 cuerdas perteneció a la sociedad Puig Hermanos y Cía., que ésta la vendió por escritura pública de 23 de diciembre de 1875 a Bartolomé Borrás, inscribiéndose la venta en el registro el 13 de junio de 1892; que muerto Borrás bajo testamento, pasó el dominio de la finca por herencia a su viuda Gerónima Ginart y a sus hijas Catalina y Juana Borrás y Ginart, inscribiéndose en el registro el 12 de agosto de 1893; que seguido un pleito en la Corte de Distrito de Humacao por Francisco y María Antonia Ramis contra Catalina y Juana Borrás y Ginart, Sucesión de Gerónima Ginart y B. Borrás Hermanos, en liquidación, en la ejecución de la sentencia pronunciada a favor de los demandantes, se adjudicó a éstos la finca en cuestión, otorgándoles el márshal escritura de venta el 5

de julio de 1905 e inscribiéndose su derecho en el registro de la propiedad; que Francisco y María Antonia Ramis vendieron la finca a M. A. Walker por escritura pública de 3 de mayo de 1906 que se inscribió en el registro de la propiedad; que M. A. Walker a su vez la vendió a J. B. Cobb por escritura pública de 17 de diciembre de 1906 que se inscribió en el registro, y que J. B. Cobb, por último, la vendió al demandado por escritura pública de 18 de julio de 1908; que él demandado es desde entonces el dueño legítimo de dicha finca, con su derecho inscrito en el registro de la propiedad y está en la quieta y legal posesión de la misma, y que los demandantes jamás fueron dueños ni estuvieron en posesión de la más mínima parte de la finca, que ni estuvo ni está inscrita a su favor en el registro de la propiedad; 4°. que el dominio y posesión de la otra finca de 60 cuerdas los adquirió Bartolomé Borrás de Felipe Jiménez por escritura pública de 30 de marzo de 1871; de Borrás pasó a sus herederos Gerónima Ginart, su viuda, y Juana y Catalina Borrás y Ginart, sus hijas; de éstos a virtud de adjudicación en pago de sentencia, a Francisco y María Antonia Ramis; de éstos a M. A. Walker; de éste a J. B. Cobb y de éste al demandado, ocurriendo todas dichas transferencias en la misma forma que las de la finca de 76.77 cuerdas y constando todas inscritas en el registro de la propiedad, en cuyos libros no aparece inscrito el alegado derecho de lós demandantes que tampoco han poseído la más mínima parte de la finca; 5°. que el dominio y posesión de la tercera finca de 1½ cuerdas, los adquirió Bartolomé Borrás por compra a Isabel Ramírez hecha constar en escritura pública de 14 de octubre de 1870; de Borrás pasó a sus herederos, de éstos a los Ramis, de éste a M. A. Walker, de éste a J. B. Cobb y de éste al demandado Velázquez, en la misma forma que las otras fincas, y 6°. que el demandado niega que los demandantes, no teniendo como no han tenido ni tienen derecho alguno a las fincas litigiosas, hayan sufrido daños por la posesión legal del demandado y sus predecesores en los inmuebles litigiosos.

La contestación termina suplicando que se declare sin lugar la demanda, con las costas a los demandantes.

La prueba presentada por los demandantes consistió:

(*a*) En la declaración del demandante Evaristo Fernández que dice así:

"Que se llama Evaristo Fernández, es uno de los demandantes en este pleito y que José Maximino Fernández Borrás y Catalina Borrás son sus hijos legítimos; que estuvo casado con Doña Catalina Borrás y Ginart y esos dos hijos son fruto de su matrimonio; que Doña Catalina Borrás era hija de Doña Gerónima Ginart y de Don Bartolomé Borrás; que Doña Gerónima Ginart está muerta y murió antes que Doña Catalina; que Don Bartolomé Borrás dejó dos hijos, a saber: a la que fué su esposa Doña Catalina Borrás Ginart y también a Doña Juanita Borrás Ginart; que Doña Catalina Borrás y Doña Juana Borrás formaron la sucesión de Doña Gerónima Ginart; que conoce las siguientes parcelas de terreno descritas en la demanda: un predio de terreno de 264 cuerdas radicadas en el barrio de Cañabón; otro predio de 11 cuerdas en el barrio de Cagüitas; otro predio de 31 cuerdas en el barrio de Cagüitas, otro predio de 22 cuerdas 39 centavos en el barrio de Cagüitas y una parcela de 37 cuerdas en el barrio de Bairoa y que ha conocido dichos terrenos por un tiempo alrededor de veinte años; que éstos sirven para la siembra de cañas para lo cual son magníficos y que el precio del arrendamiento de esos terrenos en el vecindario de Caguas, es en la actualidad por lo menos $1 mensual por cuerda; que conoce el precio de los terrenos en Caguas en arrendamiento y que éste es $1 por cuerda mensual y lo ha sido de 4 a 5 años a esta parte."

(*b*) En una copia certificada de la resolución de la Corte de Distrito de San Juan dictada el 20 de diciembre de 1904, declarando herederos de María Catalina Borrás y Ginart, fallecida el 4 de junio de 1904, a sus hijos José Maximino y Catalina Dolores Fernández y a su viudo Evaristo Fernández.

(*c*) En la declaración de José L. Pereyó, Marshal de la Corte de Distrito de Humacao, con objeto de presentar ciertos autos sobre ejecución de sentencia, y

(*d*) En los dichos autos, de los cuales aparece que para

ejecutar la sentencia dictada el 10 de julio de 1903 en el caso de *Ramis* v. *Borrás y otros,* se libró auto de ejecución el 12 de junio de 1905; que se vendieron en pública subasta adjudicándose a los demandantes las fincas de 60 y 76.77 cuerdas previamente embargadas, y no alcanzando a satisfacer el montante de la sentencia, se embargaron otras propiedades de los demandados entre ellas la de 1½ cuerdas a que se refiere la demanda.

La prueba del demandado consistió en la presentación de varios documentos públicos creditivos de las compras de Walker a los Ramis, de Cobb a Walker y de Velázquez a Cobb, todos dichos documentos debidamente inscritos en el registro de la propiedad.

Y la corte de distrito resolvió que la ley y los hechos estaban en contra de la parte demandante y en su consecuencia declaró sin lugar la demanda con costas. Contra esa sentencia se interpuso el presente recurso de apelación.

Los demandantes alegan, que de la prueba practicada, surge claro no sólo su derecho a la propiedad de la mitad de las fincas de que se trata, sino la nulidad del título del demandado, porque ella demuestra que cuando se libró el auto de ejecución en el pleito de *Ramis* v. *Borrás et al.,* ya había muerto la demandada Catalina Borrás y Ginart. Esta es ciertamente la cuestión fundamental envuelta en este pleito.

En primer lugar analizaremos la prueba con respecto a los derechos hereditarios alegados por los demandantes. Aparece como hecho fuera de toda duda que las fincas de que se trata en este pleito pertenecieron a Bartolomé Borrás y que muerto Borrás bajo testamento, las heredaron sus hijas Catalina y Juana y su viuda Gerónima Ginart, constando inscritas a su nombre en el registro de la propiedad.

Los demandantes reclaman a título de herederos de Catalina Borrás y Ginart, la mitad de las fincas y ellos no demuestran que tal mitad de las fincas estuviera alguna vez inscrita en el registro a favor de su causante, ni que su causante hubiera estado en posesión de la misma. Se dirá que

se reclama la mitad proindivisa de las fincas y que estando inscritas dichas fincas a favor de la madre y de dos hermanas, muerta la madre, su herencia correspondió por igual a las hermanas y quedaron éstas dueñas cada una de la mitad proindivisa. Pero tales hechos que parecen lógicos a primera vista, requieren demostración cumplida en pleitos de esta naturaleza en que se trata no sólo de reclamar derechos, sino de destruir otros derechos adquiridos *prima facie* de buena fe y de acuerdo con la ley.

Para demostrar la muerte de Gerónima Ginart y que sus hijas Catalina y Juana componen su sucesión, se aporta como única prueba la declaración deficiente y contradictoria del demandante Evaristo Fernández. Nada se sabe sobre si Gerónima Ginart falleció bajo testamento o intestada, sobre cuáles eran los bienes que constituían su herencia, y sobre el modo en que dichos bienes se partieron, y todo esto era necesario saberlo para concluir que el derecho que la madre tenía sobre las fincas había correspondido por igual a las dos hermanas y por igual se les había adjudicado. Debe tenerse bien presente que este pleito no se sigue por todos los herederos de Bartolomé Borrás, primitivo dueño de las fincas, sino por los herederos de una heredera de Bartolomé Borrás que a su vez heredó de otra heredera.

Resulta, pues, bien claro que los demandantes no probaron que su causante Catalina fuera dueña de la mitad proindivisa de las fincas reclamadas como exclusivamente suyas en este pleito. Lo único que se ha demostrado es que el dominio de las fincas en cuestión estuvo inscrito en el registro a favor de Gerónima Ginart y Juana y Catalina Borrás. Sobre la herencia de Gerónima, nada positivo y preciso se probó en el pleito.

En relación con la herencia de Catalina Borrás y Ginart, sólo consta de la prueba practicada, que Catalina murió sin otorgar testamento el 4 de junio de 1904 y que los demandantes fueron declarados sus herederos el 20 de diciembre del mismo año, por una corte de justicia. Nada se alegó ni probó

con respecto a los actos de los demandantes como tales herederos.

La herencia sólo es el conjunto de bienes que quedan después de cubiertas todas las obligaciones del difunto, y la ley fija reglas para su liquidación, tanto en los casos en que existe testamento como en los abintestato. Dada la índole especial de este pleito, los demandantes debieron probar que los bienes que ellos reclaman eran realmente suyos por herencia, esto es, que tales bienes fueron los que quedaron o eran parte de los que quedaron para los herederos después de haber satisfecho todas las obligaciones del difunto.

El Tribunal Supremo de España, en sentencia de 13 de junio de 1901, 91 Jurisprudencia Civil, 915, ha establecido la siguiente doctrina. "Que mientras no se haga la liquidación de la herencia, y por consecuencia de ella la correspondiente partición y adjudicación a cada heredero de lo que le corresponde, carecen éstos de verdadero título que les sirva para reivindicar bienes concretos y determinados de la misma herencia, pues para tal acción no es título suficiente el testamento."

Habiendo en consideración todo lo expuesto y limitándonos al examen de la prueba aportada por los demandantes, en cuanto a sus derechos hereditarios, se concluye que aun en el caso de que ellos hubieran demostrado que tenían algún derecho a la propiedad de las fincas que reclaman, habría sido la demostración en forma tan vaga e incierta, que no podría servir de base para dictar una sentencia como la que ellos solicitan.

Examinemos ahora la interesante cuestión fundamental levantada por los apelantes con respecto a la nulidad del auto de ejecución expedido en el caso de *Ramis* v. *Borrás et al.,* después de fallecida una de las demandadas en dicho pleito.

En el caso de *Mitchell* v. *St. Maxent's Lessee,* 71 U. S., 242, el Juez Davis, al emitir la opinión de la Corte Suprema de los Estados Unidos, se expresó en estos términos:

"La solución de una cuestión presentada por los autos, es decisiva de este caso. Autorizado y expedido el auto de *fieri facias*, después de la muerte de la parte, contra la que se dictara la sentencia, ¿confiere él al funcionario ejecutivo la facultad de ejecutarlo? Se admite que St. Maxent, al tiempo de su fallecimiento, era el dueño de los terrenos en litigio, y que los demandantes, ante la corte inferior, son sus herederos legales; pero se alega que St. Maxent fué despojado del título de dominio, en virtud de ciertos procedimientos de embargo, seguidos contra él, en los tribunales de Florida, que terminaron por una sentencia, mientras él vivía. Es un principio de derecho bien establecido y que frecuentemente ha recibido la sanción de este tribunal, el que la resolución o sentencia de una corte competente, es obligatoria hasta que sea revocada, y no puede ser impugnada colateralmente. Pero el defecto en el presente caso, ocurre después de dictada la sentencia y es fatal para el título de Mitchell, porque los compradores en una venta judicial no están protegidos si la orden de ejecución, en virtud de la cual se hizo la venta, era nula. Una orden judicial nula no confiere al funcionario, el derecho de vender; y todos los actos ejecutados en virtud de la misma, son absolutamente nulos." (71 U. S., 237.)

Y en la Enciclopedia de Ley y Procedimiento, conocida por Cyc., tomo 17, pág. 991, se consigna:

"Según la ley común, si el demandado moría después de haberse dictado sentencia y antes de expedirse la orden de ejecución, no podía expedirse la orden de ejecución sin un *scire facias*. Esta ha sido la regla casi universal en este país y una orden de ejecución así expedida ha sido casi universalmente declarada nula. Una orden de ejecución contra una persona fallecida es una nulidad, por no existir demandado contra quien, o contra cuyos bienes, pueda seguirse el procedimiento. En algunos casos una orden de ejecución así expedida ha sido declarada anulable solamente, y no nula. Sin embargo, en los casos en que la regla de la ley común con respecto a este punto ha sido modificada mediante un estatuto, debe seguirse estrictamente dicho estatuto en todos respectos, para reclamar los derechos conferidos por el mismo."

Veamos lo que dicen nuestros estatutos con respecto a la materia. El artículo 244 del Código de Enjuiciamiento Civil es como sigue:

''No obstante la muerte de una de las partes después de dictada la sentencia, podrá librarse orden de ejecución de la misma, o exigirse su cumplimiento, en los casos siguientes:

''1. En caso de muerte del acreedor declarado tal por la sentencia, mediante solicitud de su albacea, administrador o sucesor en sus derechos.

''2. En el caso de muerte del deudor declarado tal por la sentencia, si ésta fuere para recobrar propiedad real o personal.

El caso concreto que resolvemos está claramente comprendido dentro de las prescripciones del artículo transcrito, bien se considere que el pleito de *Ramis* v. *Borrás et al.* versó sobre reclamación de propiedad real, dado que hay indicaciones en los autos que tienden a demostrar que se trataba de la ejecución de una hipoteca, ya se concluya que se estableció para recobrar propiedad personal.

No expresa la ley el procedimiento que deba seguirse en el caso del No. 2º. del artículo 244, como lo hace en el primero, pero teniendo en cuenta la jurisprudencia establecida y lo dispuesto en el artículo 69 del propio Código, es indudable que cuando ocurre el fallecimento del demandado, debe ponerse tal hecho en conocimiento del tribunal que dictó la sentencia, y solicitarse que la ejecución se expida contra la sucesión del fallecido, dando a dicha sucesión la intervención en el procedimiento que corresponde a una parte realmente interesada.

Basándose en la prueba practicada, los apelantes alegan que el auto de ejecución se expidió contra todos los demandados en el pleito de *Ramis* v. *Borrás et al.*, a saber, Catalina y Juana Borrás y Ginart, Sucesión de Gerónima Ginart y Borrás Hermanos en liquidación, después que había fallecido la demandada ·Catalina Borrás, sin haber revivido la sentencia en cuanto a los herederos de Catalina Borrás, ejecutándose en propiedades que en parte pertenecían ya a los demandantes como herederos declarados de Catalina.·

Un examen de la prueba practicada sólo demuestra que el auto de ejecución se libró en efecto contra todos los deman-

dados en el pleito, pero nada aparece si se hizo o nó con el conocimiento y consentimiento de los herederos de Catalina. Este hecho concreto, ni se alegó ni se probó por los demandantes.

Atendida la naturaleza del caso, de acuerdo con la ley vigente en Puerto Rico, la sentencia dictada en el pleito de *Ramis* v. *Borrás et al.* pudo ejecutarse después de muerta una de las demandadas, y como sólo parece que el espíritu de la jurisprudencia es que en tales casos no se proceda a espaldas de los herederos para evitar fraudes e injusticias, los demandantes debieron demostrar que ellos ni tuvieron conocimiento de la expedición del auto, ni consintieron en que se ejecutara en la forma en que fué expedido.

Pero aun cuando se llegara a la conclusión de que habiendo muerto Catalina Borrás, una de las demandadas en el pleito de *Ramis* v. *Borrás,* y no habiéndose revivido la sentencia contra los herederos de Catalina, no debió expedirse el auto de ejecución contra la dicha Catalina, ni debió ejecutarse en bienes que fueron de la misma; es lo cierto que el auto se expidió y se ejecutó en bienes que en parte le pertenecieron y que la venta se inscribió en el registro de la propiedad, en donde no constaba ni consta aún inscrito el derecho de los demandantes, y siendo esto así, y habiendo adquirido el demandado de aquél que en el registro aparecía como dueño, su título no puede invalidarse.

Existe vigente en Puerto Rico desde hace muchos años una Ley Hipotecaria cuyos preceptos claros y terminantes resuelven este caso.

Si bien el artículo 33 de dicha ley prescribe que "la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes," el 34 dispone que "no obstante lo declarado en el artículo anterior, los actos o contratos que se ejecutan u otorguen por persona que en el registro aparezca con derecho para ello, no se invalidarán en cuanto a tercero, una vez inscritos, *aunque después se anule* o resuelva el derecho del otorgante en virtud de título anterior no ins-

crito, o de causas que no resulten claramente del mismo regis-
tro. Solamente en virtud de un título inscrito podrá invali-
darse, en perjuicio de tercero, otro título posterior también
inscrito, salvo lo dispuesto en el artículo 389.''

En el presente caso el demandado adquirió de J. B. Cobb,
que tenía su derecho inscrito en el registro, Cobb de M. A.
Walker, que era el dueño según el registro; Walker de los
Ramis que figuraban en el registro con su derecho inscrito; los
Ramis de Catalina y Juana Borrás y de la sucesión de Geró-
nima Ginart, por medio del marshal de una corte, en la eje-
cución de una sentencia dictada contra los que aparecían
como dueños en el registro; y las Borrás y la Ginart de
Bartolomé Borrás, a favor de quien se inscribió por vez pri-
mera la finca en el Registro de la Propiedad de Caguas. Y
no sólo aparece que el demandado adquirió de quien era el
dueño según el registro, sino de quien estaba en posesión, y
además, que el demandado está actualmente en posesión de
las fincas y tiene inscrito su derecho en el registro.

En cuanto a los demandantes, resulta que no obstante
haber sido declarados herederos de Catalina Borrás el 20
de diciembre de 1904, ellos no inscribieron su derecho en el
registro, y para el registro, según dice Galindo en su Legis-
lación Hipotecaria, tomo 2°., página 207, el derecho del here-
dero nace de la inscripción.

Nada absolutamente se ha alegado ni probado en este
pleito con respecto a que existiera fraude o mala fe por parte
del demandado, ni por parte de sus antecesores en derecho,
ni siquiera se ha alegado ni probado, que el dicho deman-
dado tuviera conocimiento del hecho de que cuando se expi-
dió el auto de ejecución en el pleito de *Ramis* v. *Borrás et
al.,* había muerto una de las demandadas en el dicho pleito.

Pero se alega por los apelantes, que el demandado debió
haber investigado la historia de su título más allá de los
límites del registro, ya que el registro le indicaba que una de
las adquisiciones se había verificado como consecuencia de
un pleito.

El artículo 18 de la Ley Hipotecaria, impone a los registradores el deber de calificar bajo su responsabilidad, la legalidad de las escrituras en cuya virtud se solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas escrituras, debiendo dichos registradores calificar también bajo su responsabilidad y para el único efecto de admitir, suspender o negar su inscripción o anotación, todos los documentos expedidos por la autoridad judicial.

El demandado por tanto pudo confiar en la calificación del registrador y en que antes de inscribir la venta otorgada por el marshal, a nombre de los demandados en el pleito de *Ramis* v. *Borrás,* el registrador examinó la personalidad del vendedor e inscribió la escritura al llegar a la conclusión de que tenía capacidad para otorgarla de acuerdo con la ley.

Pero aun cuando el demandado hubiera tenido el deber de ir más allá de los límites del registro, como aconseja la prudencia y debe hacerse para mayor seguridad en casos de esta naturaleza, al examinar los autos del pleito ¿qué hubiera encontrado?

Los demandantes no aportaron como prueba todos los autos, ni demostraron que en ellos constara la muerte de una de las demandadas, y a juzgar por los de la ejecución de la sentencia que forman parte del récord, sólo hubiera podido averiguar que la ejecución se libró contra todos los demandados y no constando la muerte de ninguno de ellos, tal procedimiento aparecía seguido enteramente de acuerdo con la ley. Además, existía a favor de los Ramis, que compraron como ya se ha dicho las fincas a que se refiere este pleito en pública subasta, celebrada en cumplimiento de una orden de un tribunal, la presunción de buena fe, de acuerdo con lo prescrito en la sección 7 de la ley relativa a las sentencias y a la manera de satisfacerlas, aprobada en marzo 9, 1905. (Leyes de 1905, pág. 187.)

Bajo cualquier aspecto, pues, que se considere este caso,

se llega a la conclusión de que la sentencia apelada, declarando sin lugar la demanda, debe confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary y Aldrey.

El Juez Asociado Sr. Wolf, firmó la sentencia haciendo constar estar conforme con ella, pero no con algunos de sus fundamentos.