JOSEFA DELGADO, demandante y apelada, *v.* JOAQUÍN RIVERA PÉREZ y ALFONSO DURÁN OLIVO, demandados y apelante el último.

No. 5255.—*Sometido:* Noviembre 20, 1930.  *Resuelto:* Febrero 5, 1931.

*A. R. de Jesús* y *Gabriel de la Haba,* abogados del apelante;  *Cayetano Coll Cuchí* y *Luis R. Polo,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Versa este pleito sobre nulidad de escrituras.   Hemos estudiado cuidadosamente las alegaciones y las pruebas y de ellas resulta lo que sigue:

Josefa Delgado, la demandante en este pleito, demandó a Joaquín Rivera Pérez, uno de los aquí demandados, en cobro de una deuda garantizada con hipoteca, dictándose sentencia en favor de la demandante el 3 de mayo de 1927, condenando al demandado a pagarle tres mil dólares de principal, con más los intereses y las costas.

En ejecución de la sentencia se vendió en pública subasta la finca hipotecada—un solar con casa con frente a la calle de las Flores, de Santurce—adjudicándosele a la deman-

dante por la suma de mil dólares como abono y a cuenta del total del crédito hipotecario. La adjudicación quedó inscrita en el registro de la propiedad en julio 2 de 1927.

Así las cosas, el demandado Joaquín Rivera Pérez formuló una demanda contra la aquí demandante Josefa Delgado en la Corte Municipal de San Juan, el 17 de noviembre de 1927, pidiendo que se le reconociera en la casa de la calle de las Flores su derecho de hogar seguro hasta la suma de quinientos dólares. Declarando el demandado Joaquín Rivera, en la vista del pleito de nulidad de escrituras, sobre el pleito que siguiera en reclamación del hogar seguro, se expresó así:

"P. ¿Ud. presentó en la Corte Municipal de San Juan una demanda para que se le reconociera un derecho de hogar seguro sobre una finca que era de Ud. y había sido adjudicada en una ejecución hipotecaria a la señora Delgado?

"R. Sí, señor.

"⁎ ⁎ ⁎ ⁎ ⁎ ⁎ ⁎

"P. ¿Quién era su abogado?

"R. Angel Vázquez.

"(Juez) P. ¿Quién firmaba las alegaciones aquí?

"R. Yo.

"P. ¿Ud. tenía un abogado llamado Angel Vázquez y las alegaciones ante la Corte las firmaba Ud.?

"R. Sí, señor.

"P. ¿Esta es una maquinilla del bufete del señor Vázquez?

"R. Yo le dejé el caso a Agustín Hernández Mena.

"P. ¿El lo representaba a Ud. como abogado?

"R. El nombró al licenciado Angel Vázquez.

"P. ¿Qué tenía que ver con el señor Hernández Mena?

"R. Nada.

"P. ¿Por qué nombró él el abogado?

"F. Fué un pleito que le dí a él junto con otro al 50%.

"P. ¿Cómo le dió un pleito al 50%, como socio, diciendo que no tenía nada que ver con él?

"R. El abogado.

"P. ¿Sabe si Hernández Mena es abogado?

"R. No lo sé.

"P. ¿Le entregó a él el asunto del hogar seguro al 50%?

"R. Sí, señor."

'Librado el emplazamiento en el pleito de reclamación de hogar seguro, fué diligenciado por Agustín Hernández, así:

"Yo, Agustín Hernández, juro que soy mayor de edad, casado, vecino de San Juan, P. R., y no soy parte ni tengo interés en este asunto; que recibí el presente emplazamiento a las 9 de la mañana del 29 de noviembre de 1927, que notifiqué el mismo personalmente el 29 de noviembre de 1927, fuí informado por Elisa Delgado que su hermana la demandada en este caso Josefa Delgado, no reside en esta ciudad ni en la Isla de Puerto Rico, por haberse ausentado para el extranjero donde se encuentra, sin saber su residencia fija, por cuyo motivo no ha sido ni es posible notificarle personalmente este emplazamiento. Fecha hoy día 29 de noviembre de 1927.''

Se pidió entonces a la corte que ordenara la citación de la demandada por edictos y la corte accedió así:

"Vista la anterior moción jurada del demandante, y lo que disponen los artículos 94 y 95 del Código de Enjuiciamiento Civil la declara con lugar, y en su consecuencia decreta y ordena que, la demandada en este caso Josefa Delgado sea emplazada de la demanda en este asunto, por medio de edicto que se publicará una vez por semana durante el término de un mes, y que una copia de la demanda y del emplazamiento le sea dirigido a su residencia por el demandante, en caso de qué éste pueda obtener informes de la residencia de dicha demandada.''

Los edictos se publicaron en "La Correspondencia de Puerto Rico'' y el 16 de febrero de 1928 el secretario de la corte municipal anotó la rebeldía de la demandada, y el 27 del propio mes y año la corte municipal dictó sentencia declarando la demanda con lugar, con costas.

Presentado y aprobado el memorándum de costas que ascendió a $50 de los cuales $25 fueron por honorarios de abogado, se pidió que se expidiera mandamiento para la ejecución de la sentencia. El mandamiento fué librado. Se trabó embargo sobre la dicha casa de la calle de las Flores, anotándose en el registro de la propiedad, se anunció su venta en pública subasta y se vendió en efecto, adjudicándosele al aquí demandado Joaquín Rivera y allí demandante "en pago

de su derecho de *homestead* por la suma de quinientos *dollars*", otorgándose la correspondiente escritura el 28 de abril de 1928, que se inscribió en el Registro el 3 de mayo de 1928.

El 20 de julio de 1928 la demandada en el pleito de hogar seguro, demandante en éste, por medio de su apoderado, presentó a la corte municipal una moción de apertura de rebeldía acompañada de un *affidavit* de méritos y de la contestación a la demanda, todo notificado al allí demandante Joaquín Rivera, demandado aquí.

El 4 de agosto de 1928 se señaló la vista de la moción para el 14 del propio mes.

Figura luego en los autos del pleito sobre reclamación de hogar seguro, un escrito de Joaquín Rivera de fecha 26 de julio de 1928, notificado al abogado de la parte contraria el 4 de agosto, 1928, pidiendo la eliminación de la moción sobre apertura de rebeldía.

El 17 de agosto la corte municipal en una resolución fundada discutió la apertura de la rebeldía, dejando sin efecto todo lo actuado y ordenando que quedara en los autos la contestación y continuara el pleito tramitándose de acuerdo con la ley.

El 29 de agosto, 1928, Joaquín Rivera solicitó reconsideración de la resolución del 17. Su moción fué declarada sin lugar. Y seguido el pleito adelante, se resolvió finalmente el 17 de octubre de 1928, por una sentencia que dice:

"En octubre 9, 1928, y en corte abierta se llamó este caso para juicio por su orden de señalamiento, habiendo comparecido solamente la parte demandada y no así la parte demandante, a pesar de estar debidamente notificada del señalamiento.

"La parte demandada presentó su prueba consistente en varios documentos y prueba testifical, habiendo sometido el caso a la consideración de esta corte.

"En el día de hoy y habiendo probado la parte demandada que el dinero que fué prestado por la demandada al demandante, fué precisamente para la compra de solar y para la fabricación de la casa en la cual reclama tener un derecho de *homestead* el demandante, la corte es de opinión que los hechos y la ley están a favor

de la demandada y en contra del demandante, pues tampoco el demandante habitó la referida casa que se describe en la demanda, hasta mucho tiempo después de terminada la misma y en su consecuencia falla, declarando sin lugar la demanda y por lo tanto sin derecho a la reclamación del *homestead* solicitado por el demandante, con las costas y gastos en contra de dicho demandante.''

La sentencia fué notificada personalmente a Joaquín Rivera el 23 de octubre de 1928 y no consta que contra ella se interpusiera recurso de apelación.

Mientras estos últimos hechos ocurrían, el 15 de agosto de 1928, esto es, después de presentada la moción sobre apertura de rebeldía por la demandada Josefa Delgado, aquí demandante, de señalada su vista y de solicitada su eliminación de los autos por el demandante Joaquín Rivera, aquí demandado, éste compareció ante notario y vendió a Alfonso Durán, el otro demandado, la casa de la calle de las Flores, por precio de cuatro mil pesos de cuya cantidad pagó en efectivo el comprador dos mil, reservando los otros dos mil para pagar una hipoteca que para garantir esa suma se había constituído sobre la casa a favor de Doña Joaquina Castillo.

Ante esa situación, inició la demandante este pleito en solicitud de que se decretara la nulidad de las ventas del márshal al demandado Joaquín Rivera y de éste al otro demandado Alfonso Durán.

Rivera no se defendió en el pleito. Durán alegó que había comprado de quien en el registro aparecía con derecho para vender sin que tuviera tampoco conocimiento de que el título de la persona que le vendió adoleciera de defecto alguno, habiendo pagado por la finca un precio razonable.

Fué el pleito a juicio y la corte de distrito lo resolvió por sentencia de 16 de octubre de 1929 declarando la demanda con lugar. En su relación del caso y opinión, la corte analiza las alegaciones y las pruebas y concluye que la corte municipal actuó sin jurisdicción en el pleito sobre reclamación de hogar seguro al dictar su sentencia en rebeldía y que el demandado no es un tercero en ley, ni actuó de buena fe.

Contra la sentencia interpuso el demandado Alfonso Durán el presente recurso de apelación, señalando la comisión de dos errores, así:

"PRIMERO: La corte cometió error al declarar que Alfonso Durán no pagó precio alguno por la finca objeto de este procedimiento, siendo por tanto simulada y fraudulenta la venta en cuestión.

"SEGUNDO: La corte cometió error al declarar que el apelante, Alfonso Durán, no es un tercero de acuerdo con las disposiciones del art. 34 de la Ley Hipotecaria."

Después de un detenido estudio de las alegaciones y la prueba creemos que puede admitirse la comisión del primer error, mas no la del segundo. A nuestro juicio no se demostró que el demandado y apelante Alfonso Durán se confabulara con el otro demandado Joaquín Rivera, pero sí se demostró que el dicho demandado y apelante Durán fué informado por el registro y por la escritura del márshal al demandado Rivera, que le era conocida, de circunstancias tales que lo pusieron sobre aviso de lo que podía suceder como sucedió en cuanto al título de la propiedad que adquiriera.

De acuerdo con la ley, una sentencia en rebeldía, cuando no se ha citado al demandado en persona, está sujeta a ser dejada sin efecto, permitiéndose al demandado que conteste, dentro del término de un año que marca el estatuto (Artículo 140 del Código de Enjuiciamiento Civil; *Pérez* v. *Fernández,* 220 U.S. 224), y aquí ese término no había transcurrido cuando adquirió Durán de Rivera, según aparecía del registro de la propiedad y de la escritura del márshal a Rivera.

Si la sentencia se anulaba como se anuló en este caso por falta de jurisdicción, caía como cayó por su base no sólo el título del demandado Rivera, si que también el del demandado Durán.

De la narración que dejamos formulada, surgen tan evidentes las circunstancias concurrentes, que no es necesario detenernos a comentarlas.

Las razones que tuvo la corte municipal para abrir la re-

beldía aparecen de una opinión emitida por su juez que se transcribe en la relación del caso y opinión del juez de distrito. Son así:

"Veamos ahora si esta corte puede y debe acceder a lo solicitado por la parte demandada en su moción sobre apertura de rebeldía.

"De acuerdo con el Artículo 140 del Código de Enjuiciamiento Civil de Puerto Rico, una corte de justicia y cuando por cualquier causa la citación en una demanda no se hubiese hecho a la parte demandada en persona, podrá la corte, en la forma que estimare justa, permitir que dicha parte demandada o su representante legal, en cualquier tiempo dentro del año de pronunciado el fallo en ella, la conteste tal y como se interpuso. En este caso se procedió a solicitar de la corte que se emplazara por edictos a la demandada y esto se hizo en virtud de una moción jurada por el demandante, que es completamente insuficiente y la cual fué presentada ante el juez que ahora preside esta corte, en el mes de noviembre, 1927, durante el que sirvió interinamente dicho cargo y que reconoce que firmó dicha orden inadvertidamente, habiendo sido traída y preparada por la parte demandante. Aun así y todo, prescindiendo de la insuficiencia de la moción para solicitar la orden para la publicación de edictos, nos encontramos que se han publicado edictos que no se ajustan a la orden de la corte. La corte jamás ordenó que la publicación se hiciera en el periódico 'La Correspondencia de Puerto Rico', según consta del propio edicto como parte de la orden y también dice la orden que una copia de la demanda y del emplazamiento le sea dirigido a su residencia por el demandante. No hemos visto en ninguna parte de la moción solicitando la rebeldía de la demandada, que a ésta se le remitiera a su residencia por el demandante una copia de la demanda y del emplazamiento, ni tampoco vemos en la referida moción algún hecho que demuestre, que no se le remitió dicha copia de la demanda y del emplazamiento, por no haber podido enterarse el demandante de cuál era la residencia de la demandada.

"Si analizamos bien este asunto de la citación por edictos en este caso, llegaremos a la conclusión, puesto que a la simple vista resalta, que el mismo día 29 de noviembre de 1927 en que recibe el diligenciante Agustín Mena el emplazamiento, ese mismo día, sin inquirir del hermano de la demandada, ya que manifiesta que éste le manifestó que no residía en Puerto Rico, cuál era la residencia de la demandada en Europa y en qué parte de Europa se encontraba, ese mismo día decimos, se prepara una moción solicitando que se dictara la orden para la publicación de edictos y cuyo juramento es defec-

tuoso, pues no dice que lo alegado por información también lo cree cierto, siendo lo más importante precisamente de esa moción.

"Además en este caso todo se ha llevado de una manera tan rara y tan precipitada y sobre todo en lo que se relaciona al emplazamiento de la demandada, que no nos queda otro remedio que declarar con lugar la moción sobre apertura de rebeldía, pues esta corte entiende, que nunca tuvo jurisdicción sobre la persona de la demandada para proceder en contra de ella y mucho menos para quitarle una propiedad de más de cuatro mil dollars, sin su conocimiento, ignorándolo todo, para que el demandante se quedara con ella por la cantidad de $500.00, y no como pago, sino que fué para abonar a la cuenta reclamada."

Por su cuenta el juez del distrito agrega que la falta de validez del título de Rivera resultaba del propio registro por los siguientes motivos:

"Pero aun siendo así, de la certificación del Registro de la Propiedad aparece que la adjudicación a Rivera fué hecha en una reclamación sobre *homestead;* y leyendo nosotros ahora la ley de *homestead,* encontramos que lo que esta ley garantiza a un jefe de familia, es un derecho en una finca de *homestead* hasta la suma de $500.00, y reconocido y adjudicado este derecho en una finca de *homestead* hasta el valor de $500.00, tendríamos entonces que la cabeza de familia tiene un condominio en la finca, pero nunca un derecho tal a vender la propiedad, sin darle previo conocimiento al otro condueño, o sea, a la persona consocia, del exceso del valor en la finca objeto del *homestead.* En otras palabras, nosotros no hemos encontrado en realidad precepto alguno que faculte a la persona que obtenga un derecho de *homestead,* a ejecutar una finca por el valor del *homestead.* Nada dice la ley de *homestead* sobre esta cuestión. La hemos estudiado cuidadosamente tanto en inglés como en español, y no dice tal cosa. Nos parece que la interpretación que le damos es la más justa. El *homestead* es un derecho que se reconoce en la propiedad. Este derecho establece un condominio en la finca de *homestead.* Si la persona a cuyo favor se reconoce este derecho desea no continuar en el condominio, tiene sus medios en ley para terminar el mismo. Pero no hemos podido encontrar precepto alguno que diga que por el mero reconocimiento de un derecho de *homestead,* pueda la persona a cuyo favor se hace tal reconocimiento, ejecutar una finca y adjudicársela, privando de este modo a la otra parte de su propiedad. Sostener tal cosa sería llegar al absurdo, cosa que la ley no tolera."

Cita la parte apelante en su alegato el caso de *El Pueblo* v. *Riera,* 27 D.P.R. 1. En dicho caso, dijo esta corte por medio de su Juez Asociado Sr. Aldrey:

"En el caso de Fernández et al. v. Velázquez, 17 D.P.R. 757, que versó sobre reivindicación de fincas vendidas en subasta judicial en un pleito que se alegó luego contener vicios de nulidad, estando las fincas al tiempo de la demanda en poder de tercera persona, se suscitó la misma cuestión que ahora nos ocupa al alegar los apelantes 'que el demandado debió haber investigado la historia de su título más allá de los límites del registro, ya que el registro indicaba que una de las adquisiciones se había verificado como consecuencia de un pleito.' Nuestra resolución fué que puesto que el artículo 18 de la Ley Hipotecaria impone a los registradores el deber de calificar bajo su responsabilidad la legalidad de las escrituras y la capacidad de los otorgantes, el demandado pudo confiar en la calificación del registrador. A esto agregaremos ahora que los registros están encomendados a abogados capaces que obtienen sus cargos por oposición y que además prestan fianzas para responder del buen desempeño de su cargo.

"En resumen, pues, como es en el registro de la propiedad y no en otras oficinas, donde deben constar claramente las causas de nulidad o de rescisión de los actos o contratos para que perjudiquen a un tercer adquirente con título inscrito, y como en este caso el vicio de nulidad del título de Gestera no consta del mismo registro, el apelante Riera está protegido por el artículo 34 de Ley Hipotecaria contra ese vicio de nulidad."

La jurisprudencia citada es correcta, pero este caso es diferente de aquéllos en que fué establecida y aplicada. Aquí, por el registro y por la escritura que a su vendedor Rivera otorgara el márshal de la corte municipal, de la que tuvo conocimiento el demandado Durán, quedó éste enterado de que el título que ostentaba su vendedor no obstante estar inscrito en el registro procedía de una adjudicación hecha por un márshal de una corte municipal en un pleito sobre declaración de hogar seguro en que se había dictado sentencia por rebeldía contra un demandado que no había sido citado personalmente, sin que hubiera transcurrido el tiempo que la misma ley concede para abrir la rebeldía. En esas condicio-

nes, Durán no puede invocar el carácter de tercero hipote-
cario.

*Debe confirmarse la sentencia recurrida.*